| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**MELVIN FELIZ, IRVING OLIVERO-PENA, and ROBERT CRAWFORD,**<br><br>Defendants. | Crim. No. 14-327 |

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**MELVIN FELIZ,**<br><br>Defendant. | Crim. No. 15-421<br><br><br>**OPINION & ORDER** |

## KEVIN MCNULTY, U.S.D.J.:

Melvin Feliz was criminally charged in the two above-captioned cases, which I will call the "drug case" (Crim. No. 14-327) and the "wire fraud case" (Crim. No. 15-421). In the drug case, he pled guilty, admitting under oath that he had engaged in trafficking involving over 20 kilograms of cocaine and $549,000 in cash. In the wire fraud case, he pled guilty to a phony-invoice scam in the amount of approximately $7.8 million, as well as related acts of tax evasion. The agreed sentence in the drug case (a package deal for Feliz and two codefendants) was 120 months; the agreed sentence in Feliz's wire fraud case was 48 months, to run consecutive to the drug sentence.

1

Now before the court in both cases are Mr. Feliz's motions to withdraw both pleas of guilty, pursuant to Federal Rule of Criminal Procedure 11(d). (14-327 DE 156, 159; 15-421 DE 79 ("Notice")).[1] Because they are parallel and potentially interdependent, I discuss those two motions together in this Opinion, which will be filed in both cases.

Under Rule 11(d), either of two standards could potentially govern this motion: Before the court accepts a plea, the defendant may withdraw it for "any reason or no reason"; after the court accepts a plea, the defendant must show a "fair and just reason" for withdrawal. To ascertain which of these standards applies, then, I must ascertain whether the Court has "accept[ed] the plea" for purposes of Fed. R. Crim. P. 11(d). For the reasons expressed below, I hold that the court has accepted the plea, that the "fair and just reason" standard therefore applies, and that Mr. Feliz has failed to meet it. The motions are therefore denied.

## I. BACKGROUND

### A. Guilty plea in the drug case

#### 1. Background of the plea

On June 6, 2014, the grand jury returned an indictment in the drug case charging Mr. Feliz with conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and money laundering, in violation of 18 U.S.C. § 1956(h). Also charged were two codefendants, Irving Olivero-Pena and Robert Crawford.

---

[1]     For ease of reference, I collect here the key citation abbreviations used in this Opinion:

| | | |
|---|---|---|
| 14-327 DE | = | Docket entry number in the drug case, Crim No. 14-327 |
| 15-421 DE | = | Docket entry number in the wire fraud case, Crim No. 15-421 |
| GPD Tr. | = | Transcript of guilty plea hearing in drug case (14-327 DE 151) |
| GPW Tr. | = | Transcript of guilty plea hearing in wire fraud case (15-421 DE 82) |

On October 21, 2014, the government filed an enhanced penalty information, pursuant to 21 U.S.C. § 851(a), stating that Mr. Feliz had a prior, 1989 conviction of a felony drug offense. (DE 62) The effect of the information (if its allegations were proven, of course) would have been to increase the mandatory minimum sentence.[2] *See* 21 U.S.C. § 841(b)(1)(A).

## 2. The guilty plea proceedings in the drug case

On February 4, 2015, following some fairly intensive motion practice, Mr. Feliz and his codefendants, Olivero-Pena and Crawford, agreed to a "package deal" entailing simultaneous pleas of guilty in the drug case. All three written plea agreements were made under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Each of the three defendants stipulated to a sentence of 120 months' imprisonment, the statutory minimum for an offense involving 5 or more kilograms of cocaine. All agreed to factual stipulations that the offense involved 20 kilograms of cocaine and some $549,000 in cash. In Mr. Feliz's case, the government agreed to dismiss the enhanced penalty information pursuant to 21 U.S.C. § 851, thus restoring the unenhanced mandatory minimum sentence of ten years. (*See* Plea agreement, 14-327 DE 144; Transcript of plea hearing in drug case ("GPD Tr."), 14-327 DE 151.)

At the plea hearing, the Court conducted the inquiry required by Rule 11(b), Fed. R. Crim. P. It ensured that Mr. Feliz was mentally and physically fit to participate. It confirmed that he had read the plea agreement, had gone over it thoroughly with his attorney, and understood it. (GPD Tr. 10–11) Through

---

[2]    At the time it was filed on October 21, 2014, the enhanced penalty information (DE 62) would have increased the mandatory minimum sentence from 10 to 20 years. The First Step Act ("FSA"), Pub. L. 115-391 (Dec. 21, 2018), reduced that enhanced minimum sentence to 15 years and narrowed the time frame for a prior conviction to 15 years. In 1988, Mr. Feliz was convicted in New York of selling 3 kilograms of cocaine to an undercover officer. He was released on parole in August 1995, which would now fall outside the 15-year "lookback period" for the sentencing enhancement in the drug case. (The drug conspiracy is charged as beginning in 2011, and Mr. Feliz allocated to a conspiracy beginning in January 2012.) *See also* pp. 15–16 & nn. 5 & 6, *infra*.

questioning, the Court determined that there had been no coercion of the plea. (GPD Tr. 11–12)

The Court also accepted and filed the Application to Plead Guilty (or "Rule 11 form"), signed by Mr. Feliz, which independently confirmed what the Court elicited orally at the hearing: that the defendant understood the nature of the plea agreement, charges, and penalties, and was pleading voluntarily to an offense he had in fact committed. (DE 143; GPD Tr. 12–13)

At several points, the Court reviewed with the defendant the particulars of a Rule 11(c)(1)(C) plea agreement—i.e., that the parties had stipulated to a sentence of 120 months and that the defendant had a "right to get out of this plea deal if the sentence is anything other . . . ." (GPD Tr. 12) (The Rule 11(c)(1)(C)-related passages in the transcript are collected and set forth more fully at Section I.A.3, immediately following.)

The Court reviewed the essential elements of the narcotics charges. Mr. Feliz acknowledged that he had reviewed them with his attorney and understood them. (GPD Tr. 14–15) The Court reviewed the trial-related rights that would be waived as a result of pleading guilty and warned of various collateral consequences. The defendant acknowledged that he understood and that his plea of guilty meant that there would be no trial. (Id. 15–18)

The Court then advised Mr. Feliz as to the statutory minimum sentence of 10 years' imprisonment, the statutory maximum of life, and the other significant sentencing consequences of the plea. (GPD Tr. 18–19) He was advised of his rights under the Sentencing Guidelines and warned that the factual stipulations did not bind the Court. Here, as elsewhere, the Court clarified that these warnings were subject to the overarching Rule 11(c)(1)(C) proviso that a sentence of other than 120 months would give defendant the "right to get out of that plea" or to "withdraw the guilty plea." (Id. 19–21) The Court reviewed the plea agreement's waiver of the right to bring an appeal or a collateral challenge if the court imposed a sentence of 120 months. (Id. 21–23)

The Court questioned Mr. Feliz's counsel, Mr. Joyce, as to the "package deal" aspect of the plea. The object of that questioning was to ensure that Mr.

4

Feliz was properly represented by counsel who had acted in his individual interest. Mr. Joyce confirmed that he believed the plea benefited his client, particularly in that the enhanced penalty information would be withdrawn, reducing the mandatory minimum. (GPD Tr. 24–25) I confirmed directly with Mr. Feliz that a joint internal negotiation had occurred among the three defendants, via their counsel; that Mr. Joyce had represented Mr. Feliz's individual interest in those negotiations; and that the plea would not occur unless all three defendants went forward with the deal. (*Id.* 25–26) The Court again confirmed that the government had not coerced the plea. Mr. Feliz explicitly acknowledged that neither a co-defendant nor anyone else had forced, threatened, or coerced him to plead guilty. This was, he stated under oath, his own voluntary decision. (*Id.* 26–27)

The Court gave Mr. Feliz the opportunity, if he wished, to change his mind or withdraw any of his answers. He declined. The Court ensured that Mr. Feliz was pleading guilty because he was guilty in fact of the drug offense:

> THE COURT: Now, I'm going to ask you a question, sometimes people stumble on, but it's important, the question is Why are you pleading guilty? And by that I mean, are you guilty in fact, or are you pleading for some other reason?
>
> Maybe you don't understand the question. Would you like me to clarify it?
>
> DEFENDANT FELIZ: Yes, please do.
>
> THE COURT: Sometimes people plead guilty, but later say "I didn't really do it. I wasn't really guilty. I did it because someone I love told me to. I did it because I was afraid. I did it because it helped my co-defendants", or some other reason. What I want to know is, are you pleading guilty because you are guilty in fact?
>
> DEFENDANT FELIZ: I'm guilty.

(GPD Tr. 27)

I again ensured that Mr. Feliz had consulted with his attorney and understood the Rule 11(c)(1)(C) plea agreement:

THE COURT: Now, if I reject the plea agreement, or rather, I may reject it, that is not to accept it. Do you understand that?

DEFENDANT FELIZ: Yes.

THE COURT: But if that happens, you or the Government may elect to be released from this plea agreement, that is, you'll be returned to the status you are in before today. Do you understand that?

DEFENDANT FELIZ: Yes.

(GPD 27:5–13) The Court carefully reviewed the proviso that a sentence other than the stipulated sentence of 120 months would give him, or the government, the right to withdraw. (GPD Tr. 27–28)

The Court then elicited a factual basis for the plea, delegating the delivery of the questions to the Assistant U.S. Attorney, as is customary in this District. (GPD Tr. 28) Mr. Feliz expressed concerns about the accuracy of the starting and ending dates of the charged conspiracy, and the AUSA responded by taking a break to confer with defense counsel and revise his question.[3] (GPD Tr. 31–32)

The factual-basis colloquy resumed:

[AUSA] URBANO: Okay.

Mr. Feliz, from on or about January, 2012, to on or about December, 2012, in the district of New Jersey and elsewhere, did you conspire and agree with others to distribute and possess with intent to distribute more than five kilograms of cocaine?

DEFENDANT FELIZ: Yes.

MR. URBANO: And were Irving Olivero-Pena and Robert Crawford two of the individuals with whom you conspired?

DEFENDANT FELIZ: Yes.

MR. URBANO: Did you enter into the agreement with those individuals knowingly and intentionally, that is not by accident or mistake?

---

[3]    The plea agreement itself was amended by hand to reflect the amended dates. (DE 144 at 2).

DEFENDANT FELIZ: Yes.

MR. URBANO: Did you know that the purpose of that agreement with those individuals was to distribute and possess with intent to the distribute cocaine?

DEFENDANT FELIZ: Yes.

MR. URBANO: And in furtherance of the conspiracy, on or about October 22nd, 2012, did Irving Olivero-Pena, Robert Crawford and you, meet at a location in Bergen County with another individual who we'll call courier, and provide courier with approximately $549,150.00 with a purchase of approximately 20 kilograms of cocaine?

DEFENDANT FELIZ: Yes.

MR. URBANO: Specifically, did Irving Olivero-Pena, Robert Crawford and you, knowingly give to courier to transport them $549,950 via tractor trailer from New Jersey to California, and return the money to Robert Crawford?

DEFENDANT FELIZ: Yes.

MR. URBANO: Was the courier to wait in California for Robert Crawford to exchange the money for 20 kilograms of cocaine for other members of the conspiracy?

DEFENDANT FELIZ: Yes.

MR. URBANO: And was Robert Crawford then to provide the cocaine to courier so that courier could transport the cocaine from California to the New Jersey area to members of the conspiracy and distribution?

DEFENDANT FELIZ: Yes.

MR. URBANO: Did you know that what you were doing was in violation of law?

DEFENDANT FELIZ: Yes.

MR. URBANO: And are you pleading guilty to the offense because you are in fact guilty?

DEFENDANT FELIZ: Yes.

(GPD Tr. 32–34)

The Court again reviewed the particulars of the plea and ensured that Mr. Feliz understood them:

> THE COURT: Alright. Then just to be clear, before we get to the final stage of entry of the plea, this plea agreement to Count One of this two-count indictment, Count One being the drug charge which we've described, Count Two will be dropped and dismissed. The money laundering count will be dismissed in accordance with the agreement. It is a guilty plea that must be accepted by all three defendants to be effective. The Government agrees not to bring related criminal charges for distributed or conspiring to distribute cocaine from January, 2011, through in or about December, 2012.
>
> MR. URBANO: Your Honor, it's January, 2012 --
>
> THE COURT: Excuse me, I misstated that date. He corrected me.
>
> In addition, the Government will move to dismiss the enhanced penalty information in order to make possible the agreed-upon sentence here. It is an 11(c) plea, meaning that the agreed-upon sentence is 120 months. Any other sentence gives either side the option to get out of the plea agreement.
>
> And also very important is that the plea agreement has no bearing on Mr. Feliz's criminal liability with respect to the matters encompassed by a separate federal criminal complaint, magistrate number 14-6800, which charges, I believe, a wire and/or mail fraud. There's advice as to the maximum sentences which were given. There are certain stipulations in attachment Schedule A, and the defendant is given to understand that except for the stipulated sentence, if the Court does not accept one or more of the stipulations, that is not a basis to get out of the plea agreement. Assuming a sentence of 120 months, both sides waive their right to appeal, and the defendant waives his right to bring any collateral attack. And it is an agreement that is reached by the United States Office for the District of New Jersey only, and that is reached without regard to other civil or administrative matters.
>
> So, those are the major items as I understand them. I thought it was worth going through them again, given what's going on today.
>
> Mr. Feliz, is that a fair summary of the plea agreement?
>
> DEFENDANT FELIZ: Yes, your Honor.
>
> THE COURT: Okay.

Alright. And then I'm going to ask you, in light of everything that's happened in court today, which has been somewhat protracted, do you still wish to plead guilty?

DEFENDANT FELIZ: Yes, your Honor.

THE COURT: And I'm going to ask you the question again that I asked you before, are you entering a plea of guilty because you're guilty in fact?

DEFENDANT FELIZ: Yes, your Honor.

THE COURT: So I'm going to ask you the formal question, this is IT, how do you plead to the charge, guilty or not guilty?

DEFENDANT FELIZ: Guilty.

(GPD Tr. 36–38) Counsel confirmed that Mr. Feliz was "entering the plea voluntarily with full knowledge of his rights and responsibilities." (*Id.* 38)

The court made the necessary factual findings that the defendant understood all of the necessary advice under Fed. R. Crim. P. 11(b)((1)(A)–(O). (GPD Tr. 38)

The Court accepted the plea "provisionally," stating that it would finally accept it on sentencing day if it found a sentence of 120 months to be appropriate. (The language pertinent to the Court's acceptance of the plea is set forth more fully at Section I.A.3, immediately following.)

Mr. Feliz was then adjudged guilty of the drug conspiracy offense:

[THE COURT:] Accordingly, the defendants' plea of guilty is accepted, and the defendant is adjudged guilty of Count One, conspiracy to violate 21 U.S.C. Section 846.

(GPD Tr. 39)

### 3. Excerpts particularly relevant to acceptance of drug plea

For convenience, I have here extracted from the drug case guilty plea colloquy the passages that bear most directly on the court's acceptance of the defendant's guilty plea in the context of the Rule 11(c)(1)(C) plea agreement.

| **1.**<br>DEFENDANT FELIZ: My understanding is 120 months. That's my understanding. | GPD Tr. 12:2 |
| --- | --- |

| | |
|---|---|
| THE COURT: And we're going to talk about that more, which you have a right to get out of this plea deal if the sentence is anything other than -- <br><br> DEFENDANT FELIZ: Yes, sir. | |
| **2.** <br><br> THE COURT: Now, do you understand that a sentencing judge may impose a sentence higher or lower than that recommended by the Guidelines? <br><br> DEFENDANT FELIZ: Yes. <br><br> THE COURT: Once again, you have an 11(c) plea. You might have a right to get out of that plea should I see fit to do that. But you must be warned that that can happen. | GPD Tr. 19:20 |
| **3.** <br><br> THE COURT: . . . . Now, just taking that as a random example, if I were to find that I could not accept that or another stipulation of fact, that will not be a basis to withdraw your guilty plea with one proviso. Do you understand, in general, not accepting the stipulations is not a basis to withdraw the guilty plea? But, again, this is an 11(c) plea. If you were to receive a sentence other than 120 months, that would be a basis to withdraw the guilty plea. Do you understand? <br><br> DEFENDANT FELIZ: Yes. | GPD Tr. 21:1 |
| **4.** <br><br> [THE COURT] . . . [O]ne other element is the 11(c) aspect. I want to make sure you understand this, Mr. Feliz. If I accept your plea of guilty, I must sentence you to 120 months of imprisonment. Do you understand? <br><br> DEFENDANT FELIZ: Yes. <br><br> THE COURT: Now, if I reject the plea agreement, or rather, I may reject it, that is not to accept it. Do you understand that? <br><br> DEFENDANT FELIZ: Yes. <br><br> THE COURT: But if that happens, you or the Government may elect to be released from this plea agreement, that is, | GPD Tr. 27:24 |

| | |
|---|---|
| you'll be returned to the status you are in before today. Do you understand that?<br><br>DEFENDANT FELIZ: Yes.<br><br>THE COURT: Now, have you discussed with your attorney this right to withdraw the plea of guilty if I should not accept the 11(c) term?<br><br>DEFENDANT FELIZ: Yes.<br><br>THE COURT: And are you satisfied with your attorney's explanation?<br><br>DEFENDANT FELIZ: Yes. | |
| **5.**<br><br>THE COURT: . . . . In addition, the Government will move to dismiss the enhanced penalty information in order to make possible the agreed-upon sentence here. It is an 11(c) plea, meaning that the agreed-upon sentence is 120 months. Any other sentence gives either side the option to get out of the plea agreement. | GPD Tr. 36:14 |
| **6.**<br><br>THE COURT: I will accept the plea provisionally, that is for an 11(c) plea. I guess, it doesn't really occur until sentencing day. Provisionally, I accept the plea. And assuming that I find the sentence more than 120 months [to] be appropriate, I will finally accept it on sentencing day. Provisionally I accept it, and I'll make the following findings . . . . | GPD Tr. 38:8 |
| **7.**<br><br>THE COURT: . . . . Accordingly, the defendants' plea of guilty is accepted, and the defendant is adjudged guilty of Count One, conspiracy to violate 21 U.S.C. Section 846. | GPD Tr. 39:7 |
| **8.**<br><br>THE COURT: . . . . And I just want to, as an aside to counsel for the Government, please just remind me on sentencing day to place on the record my acceptance -- my final acceptance of the guilty plea, assuming that occurs and [a] | GPD Tr. 39:13 |

sentence [of] 120 months is imposed. That's just an I we
have to dot.

## B. Guilty plea in the wire fraud case

Mr. Feliz and his spouse, Keila Ravelo, Esq., were charged with
conducting a $7.8 million wire fraud scheme, as well as committing associated
tax offenses. The wire fraud scheme used fake vendors of litigation support
services to bill Hunton & Williams and Willkie Farr & Gallagher, two New York
law firms of which Ms. Ravelo was a partner.[4]

On August 25, 2015, Mr. Feliz waived indictment and pled guilty to a
criminal Information charging him with conspiracy to commit wire fraud, 18
U.S.C. § 1349, and tax evasion, 26 U.S.C. § 7201. (15-421 DE 60–64) This, too,
was a plea pursuant to Rule 11(c)(1)(C), entailing a total sentence of 48
months, consecutive to the sentence on the drug charges. (See plea agreement,
15-421 DE 64.) The guilty plea transcript in the wire fraud case demonstrates
that Feliz entered the plea knowingly and voluntarily, with full knowledge of his
rights. (The Transcript of the guilty plea hearing in the wire fraud case, 15-421
DE 82, is cited as "GPW Tr.".)

At the outset of the guilty plea hearing in the wire fraud case, the Court
clarified that the plea-hearing procedures would be similar to, but separate
from, those in the drug case:

THE COURT: . . . . All right. Mr. Feliz, I realize you're somewhat familiar
with this process, but we go through it the same way each time.

(GPW 9) Thus the Court conducted the usual Rule 11(b) colloquy.

---

[4]      Ravelo and Feliz were originally charged jointly in a single criminal complaint
filed on December 19, 2014. (14-mj-6800) On November 5, 2015, Ms. Ravelo was
separately charged in a nine-count indictment with conspiracy to commit wire fraud,
18 U.S.C. § 1349, four counts of wire fraud, 18 U.S.C. § 1343, and three counts of tax
evasion, 26 U.S.C. § 7201. (Crim. No. 15-576, DE 66) On November 20, 2017, Ms.
Ravelo pled guilty to the wire fraud conspiracy and one count of tax evasion. (Id. DE
152) On October 10, 2018, she was sentenced to 60 months' imprisonment. (Id. DE
170) The court entered a consent judgment of restitution in a total amount of
$8,518,018. (Id. DE 173)

The charges and the terms of the plea agreement were summarized. The Court asked the usual questions to ensure that the defendant was able to participate properly, had thoroughly consulted with his attorney, and understood the terms of the plea agreement and his rights. (GPW Tr. 9–14) The Court accepted the written Application to Plead Guilty, or Rule 11 form. (*Id.* 14–15; 15-421 DE 63) The Court reviewed the essential elements of the wire fraud and tax charges, and the defendant acknowledged that he understood. (GPW Tr. 16–20) After due warnings, he waived indictment and consented to the filing of the Criminal Information containing the wire fraud and tax charges. (*Id.* 20–22) The defendant was advised of the rights he would have if he went to trial, and he waived them. (*Id.* 22–25) He was advised of the statutory penalties, and of his rights under the Sentencing Guidelines. (*Id.* 25–29)

The court then explained the workings of a Rule 11(c)(1)(C) stipulated-sentence plea agreement:

> THE COURT: Now, that's Step 1.
>
> Step 2 is that there's a stipulated sentence, and both sides agree not to argue for any other sentence and that you, if the Court -- that's me -- decides that that is not an appropriate sentence, you have a right to apply to vacate, or get out of, this plea agreement.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Now, excuse me one moment.
>
> More formally, if I reject the plea agreement or decide I cannot accept that 48-month provision, you and the Government may elect to be relieved from the terms of the plea agreement and the parties will be returned to their status before -- as it was before the entry of the plea of guilty.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, have you discussed with your attorney this right to withdraw your plea?

THE DEFENDANT: Yes.

THE COURT: And are you satisfied with his explanation; that is, do you feel you understand the ins and outs of this 11(c) plea?

THE DEFENDANT: Yes.

(GPW Tr. 29–30)

Mr. Feliz allocuted to the facts of the case, admitting under oath that he, along with Ms. Ravelo, had devised and executed the wire fraud scheme. This scheme involving the issuance of fraudulent vendor invoices, which Ms. Ravelo would approve for payment, totaling some $7.8 million. The couple used the money for personal expenditures but concealed the income to evade federal income tax on their joint return. Mr. Feliz admitted that he performed these acts knowingly and intentionally. (GPW Tr. 34–38)

The court cautioned Mr. Feliz that he should plead guilty only if he was guilty in fact. Mr. Feliz acknowledged that he was pleading guilty because he was guilty in fact. Mr. Feliz then entered a plea of guilty to the wire fraud and tax evasion charges in the Information. (GPW Tr. 38–39)

In the wire fraud case, the court provisionally accepted the plea, in the following manner:

THE COURT: . . . . Okay. Then I am going to accept his plea.

But as I do for an 11(c) plea, I want to make something clear, which is my acceptance of the plea is provisional; that is, I am going to read the presentence report and decide whether, ultimately, whether the 48-month consecutive sentence is an appropriate one. If I agree that it is an appropriate one, I will then finally accept the plea on the sentencing date.

So I wanted to ask the Government counsel to remind me to make that acceptance final on sentencing day. It's a slight glitch in the procedure as a result of the 11(c) nature of the plea.

MR. URBANO: Yes, Your Honor.

THE COURT: But I do provisionally accept the plea, and I find that the allocution to be adequate. Any nonacceptance would be simply

14

based on sentencing reasons and the 11(c), not any flaw in the plea.

(GPW Tr. 40–41) The court made factual findings that the defendant understood all of the necessary advice and that his plea was voluntary. *See* Fed. R. Crim. P. 11(b)((1)(A)–(O). (GPW Tr. 40–41)

The Court then repeated that it was provisionally accepting the guilty plea, and "adjudged [Mr. Feliz] guilty" of the wire fraud and tax evasion offenses:

> Accordingly, the defendant's plea of guilty is accepted provisionally and the defendant is adjudged guilty of the offenses.

(GPW Tr. 42)

### C. Subsequent procedural history

Sentencing in the drug and wire fraud cases was repeatedly delayed, with the consent and in some cases on the application of Mr. Feliz. It seems that the government foresaw a need to obtain Mr. Feliz's cooperation in the event Ms. Ravelo did not plead guilty in the wire fraud case; thus it was to Mr. Feliz's benefit to delay sentencing, to reserve the possibility of obtaining a reduction of sentence based on cooperation.

Pretrial proceedings in Ms. Ravelo's case, a complex one, occupied a considerable time, and were also periodically delayed for medical reasons. On November 20, 2017, Ms. Ravelo pled guilty to the wire fraud conspiracy and one count of tax evasion. (Crim. No. 15-576, DE 152) Her sentencing was further delayed for approximately eleven months.

In the meantime, Mr. Feliz's presentence report was prepared. It was promulgated in draft form on August 6, 2018 and put in final form on September 4, 2018. The Probation office, after applying the multiple count rules and a Criminal History category of II, calculated a combined Guidelines sentencing range of 135–168 months (*i.e.*, 11 years, 3 months to 14 years).[5]

---

[5] Should the Court ultimately accept the stipulated sentence, objections to the Guidelines calculations may not have much practical effect. I note, however, that there are Guidelines calculation issues, and that the Criminal History category may be

On October 10, 2018, Ms. Ravelo was sentenced to 60 months' imprisonment. The sentencing of Mr. Feliz in the drug case was then scheduled for December 17, 2018 but delayed on consent.

On January 15, 2019, the requests to delay sentencing ceased. Instead, Mr. Feliz sent a letter to the Court stating that he wished to withdraw his plea of guilty in the drug case. Mr. Feliz forthrightly stated the reason: He believed that by withdrawing his plea he could gain the benefit of "the enactment of the First Step Act two days ago."[6] (14-327 DE 156) On January 28, 2019, Mr. Feliz's counsel supplemented his client's application with a letter brief. (14-327 DE 159) Since that time, Mr. Feliz himself has sent the Court a number of letters advocating for his position.

On May 1, 2019, Mr. Feliz's counsel filed a "Notice" stating that Mr. Feliz wished to withdraw his guilty plea in the wire fraud case as well. (15-421 DE

---

understated. Mr. Feliz has two prior convictions. The first is a 1988 conviction in New York State for selling 3 kilograms of cocaine to an undercover officer. He was paroled from that sentence in August 1995. (PSR ¶¶ 10, 184) The second is a 1997 federal conviction for perjury in connection with a civil rights action against the arresting officers. This resulted in 2 criminal history points, placing Mr. Feliz in Criminal History Category II. (PSR ¶ 11) As to the drug conspiracy, assuming that it began in 2012, the earlier drug conviction would fall outside the 15-year Guidelines "lookback period" and would not result in any additional criminal history points. *See* U.S.S.G. § 4A1.2(e)(1). As to the wire fraud or tax evasion, however, which began as early as 2008 or 2009, the earlier drug conviction would count, and would result in the addition of 3 criminal history points. To clarify these and other issues, I will be ordering the Probation Office to prepare separate presentence reports for the drug and wire fraud cases. *See infra.*

[6]     The First Step Act ("FSA"), Pub. L. 115-391 (Dec. 21, 2018), contains a number of provisions potentially relevant to imposition of sentences on drug charges:

   (a) A prior drug felony used to enhance the 10-year minimum must now have resulted in a term of imprisonment that ended within 15 years preceding the commencement of the current offense. FSA § 401 (amending 21 U.S.C § 802 (57) & (58)). The sentencing enhancement Information in this case was dropped as part of the plea agreement, however.

   (b) Eligibility for the "safety valve" exemption from a mandatory minimum sentence has been expanded, in that it is now available to a defendant who has 4 criminal history points (the prior limit was 1 point), with certain exceptions. FSA § 402. Mr. Feliz believes that application of the safety valve to his drug case offense level would permit a sentence below the mandatory minimum of 10 years.

79)[7] In the wire fraud case, too, Mr. Feliz has sent a number of letters directly to the Court. (*E.g.*, 15-421 DE 80, 84, 85, 86, 87) I made a note on the docket, observing that the Court does not recognize hybrid *pro se*/counseled status but affording the government the opportunity to respond. (15-421 DE 89) The *pro se* letters have continued. (*See* 15-421 DE 92, 93, 95, 96.)

In these letters, Mr. Feliz makes it clear that his agenda goes far beyond merely obtaining the benefit of the First Step Act. He intends to withdraw both pleas; withdraw his consent to the filing of the criminal Information in the wire fraud case; and then move to dismiss any subsequent pursuit of the wire fraud charge as untimely under the statute of limitations. (*E.g.*, 15-421 DE 93; 14-327 DE 179)

I heard oral argument on the motions to withdraw on August 23, 2019. (DE 91) At the request of counsel for both sides, I withheld decision to give the parties an opportunity to arrive at a negotiated solution. As the parties have not come forward with any such proposal, I will decide the motions now.

## II. WHETHER THE GUILTY PLEA WAS ACCEPTED

Under Rule 11(d), Fed. R. Crim. P., there are two standards that potentially govern a motion to withdraw a guilty plea. Before the Court accepts the plea, the defendant has the unfettered right to withdraw it. After the Court has accepted the plea, the defendant must demonstrate a fair and just reason for doing so. The question whether the Court has "accepted" the plea, then, is critical to the selection of the proper standard.

### A. Rule 11 standards

The procedures governing acceptance of the guilty plea itself, and procedures governing plea agreements, are separately set forth in Federal Rule of Criminal Procedure 11(b) ("Considering and Accepting a Guilty or Nolo Contendere Plea") and Rule 11(c) ("Plea Agreement Procedure"). For reasons

---

[7]     The Notice was premised on the assumption that the Court had not accepted the wire fraud plea, which could therefore be withdrawn as of right. For reasons that will become apparent, this "Notice" will be construed as a motion to the extent necessary.

that will become apparent, it is important to keep in mind the distinction between the two.

### 1. Requisites of a guilty plea under Rule 11(b)

Rule 11(b) is explicit and specific about the requirements for considering, and prerequisites to acceptance, of a valid plea of guilty:

(b) Considering and Accepting a Guilty or Nolo Contendere Plea.

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

. . . [subsections (A)–(O), listing the advice that must be given to ensure an informed and voluntary waiver]

(2) Ensuring That a Plea Is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

Fed. R. Crim. P. 11(b).

### 2. Plea agreement procedures under Rule 11(c)

Rule 11(c) then separately states the procedures governing a *plea agreement* (as opposed to the plea itself). In Mr. Feliz's case, both the drug and wire fraud plea agreements were made pursuant to Rule 11(c)(1)(C):

(c) Plea Agreement Procedure.

(1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

. . .

> (C) agree that a specific sentence or sentencing range is the
> appropriate disposition of the case, or that a particular provision of
> the Sentencing Guidelines, or policy statement, or sentencing factor
> does or does not apply (such a recommendation or request binds the
> court once the court accepts the plea agreement).

When presented by a plea *agreement* under Rule 11(c)(1)(C), the Court has three options:

> (3) Judicial Consideration of a Plea Agreement.
>
> (A) To the extent the plea agreement is of the type specified in Rule
> 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or
> defer a decision until the court has reviewed the presentence report.

Fed. R. Crim. P. 11(c).

### 3. *Withdrawal of a guilty plea under Rule 11(d)*

Rule 11(d) sets forth two distinct standards for withdrawal of a guilty plea, depending on whether the plea has been "accept[ed]" by the court:

> (d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may
> withdraw a plea of guilty or nolo contendere:
>
> (1) *before the court accepts the plea*, for any reason or no reason; or
>
> (2) *after the court accepts the plea, but before it imposes sentence* if:
>
> (A) the court rejects a plea agreement under 11(c)(5); or
>
> (B) the defendant can show a fair and just reason for requesting
> the withdrawal.

Fed. R. Crim. P. 11(d) (emphasis added).

The standard under the first scenario—withdrawal before the court has accepted the plea—is easily stated. The defendant is free to change his mind for any reason. In such a case, withdrawal is available as of right, and the court lacks the authority to deny it. *See, e.g., United States v. Andrews*, 857 F.3d 734, 739 (6th Cir. 2017); *United States v. Arafat*, 789 F.3d 839, 844 (8th Cir. 2015); *United States v. Cessa*, 626 F. App'x 464, 468 (5th Cir. 2015).

The standard under the second scenario—withdrawal after the court accepts the plea—is more complex. The "fair and just reason" standard implies that "the defendant is not entitled to withdraw that plea simply at his whim,"

*United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003), and "has no absolute right to withdraw a guilty plea prior to sentencing." *United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir. 1976) (quoting *United States v. Vallejo*, 476 F.2d 667, 669 (3d Cir. 1973)). Withdrawal will be permitted, however, where "the granting of that privilege seems fair and just." *United States v. De Cavalcante*, 449 F.2d 139, 141 (3d Cir. 1971). The defendant "bears a 'substantial burden' of 'showing a fair and just reason for the withdrawal of his plea.'" *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (quoting *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010)).

A "fair and just" reason for withdrawal of a guilty plea under Rule 11(d) depends on three factors:

> A district court must consider three factors when evaluating a motion to withdraw a guilty plea:
>
> (1) whether the defendant asserts his innocence;
>
> (2) the strength of the defendant's reasons for withdrawing the plea; and
>
> (3) whether the government would be prejudiced by the withdrawal.

*Jones*, 336 F.3d at 252 (line breaks added); *accord United States v. Napper,* No. 18-3379, 767 F. App'x 271, 272–73 (3d Cir. May 14, 2019) (not precedential); *Siddons*, 660 F.3d at 703. That three-part standard applies post-acceptance.

Rule 11(d) does not, however, define "acceptance" of a plea. I therefore look to the case law.

### B.    Acceptance of a Guilty Plea: Case Law Standards

A district court is not required "to utter some talismanic words to effect an acceptance" of a guilty plea." *United States v. Byrum,* 567 F.3d 1255, 1261 (10th Cir. 2009). "[W]hat matters ultimately is the language of the trial court and the context in which it is used." *Id.* Where, as here, "a district court conducts a Rule 11 plea colloquy pending its review of the PSR, the district court has accepted the plea for purposes of Rule 11." *Id.* at 1262. Thus, the Courts of Appeals have held that where a district court accepts a plea

20

"provisionally" or "conditionally"—conditioned, that is, on the Court's later agreement with the sentence agreed to by the parties—then the plea is accepted for purposes of Rule 11(d), and may be withdrawn only for a fair and just reason. *See id.* at 1263 (accepted "provisionally"); *United States v. Andrews,* 857 F.3d 734, 740 (6th Cir. 2017) ("The circuits that have considered what is required to indicate acceptance of a guilty plea appear to agree that the decision to 'provisionally' or 'conditionally' accept a guilty plea pending the court's review of the defendant's PSR is enough to establish acceptance and trigger the 'fair and just' standard for withdrawal under Rule 11(d)(2)."); *United States v. Battle,* 499 F.3d 315, 320–21 (4th Cir. 2007) ("provisionally accepted"); *United States v. Jones,* 472 F.3d 905, 908 (D.C. Cir. 2007) ("conditionally accepted"). A particularly important factor in many such cases is the district court, like the Court here, having adjudged the defendant guilty following a plea colloquy in accordance with Fed. R. Crim. P. 11(b). *Byrum,* 567 F.3d at 1264, *Jones,* 472 F.3d at 909.

The rationale for these holdings can be found, to some extent, in the distinction between the plea and the plea agreement. Rule 11(d) itself contains a clue about what level of "acceptance" will trigger the higher, fair-and-just standard for withdrawal of a guilty plea. It provides that the plea may be voided "after the court accepts **the plea**, but before it imposes sentence if . . . (A) the court rejects a *plea agreement* under 11(c)(5)."[8] Thus—particularly in the

---

[8]    Rule 11(c)(5) governs the procedures for a Court's rejection of a plea agreement, like this one, containing an agreed sentence under Rule 11(c)(1)(C):

(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

(A) inform the parties that the court rejects the plea agreement;

(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

specialized context of a Rule 11(c)(1)(C) plea—the Rule itself seems to contemplate a period when the *plea* has been "accepted" but the Court has not accepted or rejected the *plea agreement*.

The Supreme Court's analysis of Rule 11 in *United States v. Hyde,* 520 U.S. 670, 117 S. Ct. 1630 (1997), points the way to a resolution of that apparent conundrum. *Hyde* picks up on the Rule 11(d) distinction between the plea itself and the plea agreement, and explicitly rejects the proposition that Rule 11 inextricably binds them together for purposes of the analysis of "acceptance."[9]

> The Court of Appeals equated acceptance of the guilty plea with acceptance of the plea agreement, and deferral of the plea agreement with deferral of the guilty plea. Nothing in the text of Rule 11 supports these conclusions. In fact, the text shows that the opposite is true: Guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time.
>
> The prerequisites to accepting a guilty plea are set out in subdivisions (c) and (d) of Rule 11. Subdivision (c) [current Rule 11(b)(1)] says:
>
> "Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands," numerous consequences of

---

9    When *Hyde* was decided, the "fair and just reason" standard was contained in Rule 32. "The Federal Rules of Criminal Procedure were amended in 2002 to, *inter alia,* move the substance of prior Rule 32 authorizing defendants to seek the withdrawal of a guilty plea prior to sentencing to Fed. R. Crim. P. 11(d). Because the substance of the rule has not changed, precedent referring to Rule 32 continues to be authoritative." *United States v. Wilson,* 429 F.3d 455, 458 n.2 (3d Cir. 2005). *See also United States v. Battle,* 499 F.3d 315, 320 (4th Cir. 2007) ("[T]he advisory committee note accompanying the [2002] amendments [to Rule 11] indicates the amendments were intended to incorporate *Hyde*'s holding. *See* Fed. R. Crim. P. 11 advisory committee's note (2002 amendments); *Jones,* 472 F.3d at 908.") The amendment also caused some re-lettering of the subsections of Rule 11, which are noted in [brackets].

*Hyde*'s discussion of what constitutes acceptance of a plea, as opposed to a plea agreement, under Rule 11 therefore remains valid. Still, *Hyde* must be applied with some caution. Most pertinently, when *Hyde* was decided, Rule 32(e) "made no distinction between accepted and unaccepted guilty pleas," and the "fair and just reason" standard was widely if not universally held to apply to *all* motions to withdraw prior to sentencing. *United States v. Mendez-Santana,* 645 F.3d 822, 826 (6th Cir. 2011) (abrogating *United States v. Mader,* 251 F.3d 1099 (6th Cir. 2001)).

pleading guilty. For example, the court must ensure the defendant understands the maximum possible penalty that he may face by pleading guilty, Rule 11(c)(l), and the important constitutional rights he is waiving, including the right to a trial, Rules 11(c)(3), (4). [*See* current Rule 11(b)(1).] Subdivision (d) [current 11(b)(2)] says: "The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary." [fn. 1: *See also* Fed. Rule Crim. Proc. 11(f) [current 11(b)(3)](court should not enter judgment on an accepted guilty plea without confirming that the plea has a factual basis)]. The opening words of these two subdivisions are important: Together, they speak of steps a district court must take "[b]efore accepting a plea of guilty," and without which it "shall not accept a plea of guilty." Based on this language, we conclude that once the court has taken these steps, it may, in its discretion, accept a defendant's guilty plea. The Court of Appeals would read an additional prerequisite into this list: A district court shall not accept a plea of guilty without first accepting the plea agreement. But that "prerequisite" is absent from the list set out in subdivisions (c) and (d) [current 11(b)(1) & (2)], strongly suggesting that no such addition is warranted.

Subdivision [e] [current Rule 11(c)(1)] . . . divides plea agreements into three types, based on what the Government agrees to do: In type A agreements, the Government agrees to move for dismissal of other charges; in type B, it agrees to recommend (or not oppose the defendant's request for) a particular sentence; and in type C, it agrees that the defendant should receive a specific sentence. As to type A and type C agreements, the Rule states that "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Rule 11(e)(2) [current Rule 11(c)(3)]. . . .

· If the court had decided to reject the plea agreement, it would have turned to subdivision (e)(4) of Rule 11 [current Rule 11(c)(5)]. That subdivision, a critical one for our purposes, provides:

"If the court rejects the plea agreement, the court shall . . . advise the defendant personally . . . that the court is not bound by the plea agreement, *afford the defendant the opportunity to then withdraw the plea,* and advise the defendant that if the defendant persists in a guilty plea . . . the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." Rule 11(e)(4) [current 11(c)(5)] (emphasis added).

*Hyde,* 520 U.S. at 673–75.

    *Hyde* then stressed the important policies served by requiring a "fair and just" reason to withdraw a plea, once the Rule 11(b) colloquy has occurred:

> After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, the Court of Appeals would allow the defendant to withdraw his guilty plea simply on a lark . . . .

> We think the Court of Appeals' holding would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess.

*Hyde,* 520 U.S. at 674–77.

    Rule 11(b), then, defines the requisites of a guilty *plea.* In *Byrum, supra,* the Tenth Circuit reasoned that to "accept" a guilty plea under Rule 11, the district court is required to do just three things: "(1) advise the defendant of the rights he or she is waiving, the nature of the charge, and the associated penalties, *see* Fed. R. Crim. P. 11(b)(1); (2) ensure the plea is voluntary, see Fed. R. Crim. P. 11(b)(2); and (3) determine the factual basis for the plea, *see* Fed. R. Crim. P. 11(b)(3)." *Id.* at 1262.[10] Thus there "appears to be a consensus that a proper Rule 11 colloquy creates the presumption that a guilty plea was accepted. *Battle,* 499 F.3d at 321–22; *see also Byrum,* 567 F.3d at 1260–61; *Arafat,* 789 F.3d at 844–45." *United States v. Andrews,* 857 F.3d 734, 740 (6th Cir. 2017).

    Having fulfilled those 11(b) requirements and accepted the plea, the Court may put off acceptance of the plea *agreement*:

> (3) Judicial Consideration of a Plea Agreement.

> (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

---

[10]    Rule 11(b) spells out those requirements in far more detail, of course.

Fed. R. Crim. P. 11(c).[11]

This two-part process may create some awkwardness, especially in the context of a Rule 11(c)(1)(C) plea. Ideally, the district court would at all times explicitly draw a distinction between the plea and the plea agreement, accepting the former while deferring a decision on the latter. This, as the U.S. Court of Appeals for the Fourth Circuit has observed, has conceptual difficulties of its own; in a sense, of course, no plea is "absolutely final" until the Court makes its sentencing decision. *United States v. Battle*, 499 F.3d at 321. A Rule 11(c)(1)(C) guilty plea might best be understood as accepted but defeasible: effective against anything the *defendant* might do unilaterally, but defeasible if the *court* should later reject the plea agreement.

Rule 11 calls upon the district court to convey this contradictory state of affairs—that the plea agreement is not yet accepted, but that the plea, which is based on that very agreement, is accepted—to a lay defendant. A common practice in the district courts is to state that the guilty plea is accepted "provisionally" or "conditionally." In such a case, the clear understanding is that the plea itself is accepted, conditioned only upon the Court's ultimate agreement with the stipulated sentence. What is being "deferred" in a case of provisional acceptance, as the *Byrum* court perceived, is not acceptance of the guilty *plea*, but acceptance of the *plea agreement,* with its stipulated or recommended sentence. *Id.* Indeed, says *Byrum*, Rule 11 itself "contemplates an acceptance of a guilty plea *conditioned* on the ultimate acceptance or rejection of the *plea agreement. See* Fed. R. Crim. P. 11(c)(3)–(5)." *Id.* Rule 11(c)(3), which governs such a deferral, is explicitly directed to the "plea agreement" (as opposed to the preceding Rule 11(b), which governs the plea itself).[12] This distinction between plea and plea agreement, reasoned *Byrum,* makes sense of the apparent twilight status of a plea, accepted with full

---

[11]   As the Rule indicates, the Court may simply reject the plea agreement outright, but that did not occur here, so I do not discuss that option any further.

[12]   In that connection, *Byrum* observed that Rule 11 does not even contain a mechanism for "deferral of a decision on the [guilty] plea *itself.*" *Id.* (emphasis added).

formality after an admission of guilt under oath, but subject to the Court's later review of the appropriate sentence (usually in light of the as-yet-unprepared presentence report).

In the context of Rule 11(c)(1)(C), then, "provisional" acceptance has an obvious meaning: acceptance subject not to the *defendant*'s option, but to the *court*'s ultimate decision whether to adopt the sentence stipulated in the plea agreement. Even outside the precise context of an 11(c)(1)(C) plea, however, the "provisional" acceptance of a guilty plea is sufficient to trigger the "fair and just" threshold for withdrawal. The plea is considered "accepted" where the Court states that its acceptance is provisional, conditioned on its future review of the PSR. *Byrum*, 567 F.3d at 1262.

So, the *Byrum* panel concluded,

> [w]e agree with [*United States v. Battle,* 499 F.3d 315, 321 (4th Cir. 2007)] that permitting a defendant to withdraw his guilty plea as a matter of right after a district court makes the requisite findings and conditionally accepts the plea would undermine the importance of the Rule 11 colloquy. At the conclusion of the colloquy, the defendant has admitted his guilt and the facts relating to his criminal conduct. He has also been advised by the court of the consequences of pleading guilty. After a such a colloquy, a defendant has no reason to believe he can freely withdraw his plea. Further, Rule 11 does not prescribe any specific language of acceptance, and imposing a requirement on the district court to utter some talismanic words to effect an acceptance is not supported by the Federal Rules of Criminal Procedure or the case law.

*Id.* at 1261.

> In sum, we conclude where a district court conducts a Rule 11 plea colloquy and *then provisionally or conditionally* accepts the defendant's guilty plea pending its review of the PSR, the district court *has accepted the plea* for the purposes of Rule 11.

*Id.* at 1262 (emphasis added).

Applying its holding to the facts, *Byrum* found that the defendant had voluntarily entered into the plea of guilty to the charged offense under Rule

11(b). The district court had invoked its option under Rule 11(c)(3)(A) to reject the plea agreement after review of the presentence report. And the district court so warned the defendant:

> I am *not going to accept the plea* until I review the presentence report and am satisfied, as I mentioned earlier, that the plea agreement in this case does not undermine the goals of the sentencing guidelines. *I will accept it provisionally subject to that review.*

[citing district court transcript.] (emphasis added).

> As is evident, the court conducted a thorough colloquy and provisionally accepted Byrum's plea. While the court's language could have been more precise, the bottom line is plain-the district court accepted Byrum's guilty plea as contemplated by Rule 11 subject only to its review of the PSR.

*Byrum,* 567 F.3d at 1263.

*United States v. Battle,* 499 F.3d 315 (4th Cir. 2007), cited in *Byrum,* similarly analyzes the effect of "conditional," "provisional," or non-"final" acceptance of the plea. There, the district court had conducted a plea colloquy and ruled as follows:

> Your plea of guilty is provisionally accepted pending receipt of a presentence investigation, and the court will defer final acceptance of the plea agreement and the adjudication of guilt until we've all had an opportunity to review that report.

*Id.* at 318. The district court later issued a second ruling, embodied in an order, in which it retreated somewhat from its deferral of "acceptance of the plea agreement *and* the adjudication of guilt," *id.*:

> The order recited the events of the second plea hearing, and noted that the court had "conditionally accepted" appellant's guilty plea . . . .In choosing to conditionally accept the plea, the court noted that it was deferring further action pursuant to U.S.S.G. § 6B1.1(c), which permits a court to accept or reject a plea agreement described in Rule 11(c)(1)(A) or (C), or to defer a decision on the agreement until it has an opportunity to review the presentence report. The district judge concluded the order by

stating, "[T]he court adjudges and the defendant now stands provisionally guilty of Count One of the single-count indictment."

*Id.*

After seeing the presentence report, the defendant in *Battle* sought to withdraw his guilty plea. The court denied the motion, citing the lack of any "fair and just reason," invoking that standard because the plea had been "accepted." The Court of Appeals affirmed, essentially holding that provisional acceptance constitutes "acceptance" for purposes of a withdrawal motion:

> We conclude the district court accepted appellant's guilty plea. Placing too much emphasis on the district court's use of the qualifier "provisionally" would ignore the inherently conditional nature of guilty pleas under Rule 11. No guilty plea is absolutely final until a sentence has been imposed. *See* Fed. R. Crim. P. 11(e). Before sentencing, every guilty plea can be withdrawn if a defendant can show a fair and just reason or if the court rejects a plea agreement made under Rule 11(c)(5). Fed. R. Crim. P. 11(d)(2). Moreover, as *Hyde* and [*United States v. Jones,* 472 F.3d 905, 909 (D.C. Cir. 2007)] explained, the potential for later withdrawal does not prohibit a district court from accepting a plea. *See Hyde,* 520 U.S. at 679–80, 117 S. Ct. 1630; *Jones,* 472 F.3d 905.

*Battle,* 499 F.3d at 321. *See also United States v. Jones,* 472 F.3d 905, 909 (D.C. Cir. 2007) (holding that defendant's guilty plea was accepted where district court "announced that 'the plea of guilty is conditionally accepted subject to review of the plea agreement and the presentence report, and I find you guilty.'").

That rule, reasoned *Battle,* best reflected the presumption of finality of a plea of guilty, entered under oath with all the safeguards of Rule 11(b):

> Permitting a defendant to withdraw a guilty plea for any reason or no reason in these circumstances would undermine the importance of the plea colloquy. The rules should not be interpreted to allow a defendant to withdraw a guilty plea "simply on a lark" after the district court conducts a thorough plea colloquy and has made the requisite findings. *See Hyde,* 520 U.S. at 676, 117 S.Ct. 1630. During the colloquy, the defendant admits, in open court, that he is guilty and describes the circumstances of his guilt. It makes little sense to permit an unconditional

withdrawal of a guilty plea after the colloquy has been conducted, especially when the district court has informed the defendant of the consequences of pleading guilty and the defendant had no reason to believe he could withdraw the plea at a later date for any reason. Even if the circumstances warrant a withdrawal after the colloquy, the defendant is adequately protected by the fair and just withdrawal standard. Thus, once the district court has satisfied Rule 11's colloquy requirement, there is a presumption that the court has accepted the defendant's guilty plea. *See United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc) ("If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.") Appellant has failed to rebut that presumption in this case.

*Battle*, 499 F.3d at 321.

To be sure, there are cases in which that "presumption" of acceptance may be overcome by the court's own language:

> [B]oth the Seventh and Eighth Circuits have found that a guilty plea was not accepted despite a proper Rule 11 colloquy when the district court explicitly deferred acceptance of the plea. *United States v. Tyerman*, 641 F.3d 936, 938, 940–43 (8th Cir. 2011) ("I'm going to put off accepting your plea because I want the opportunity to review the presentence report."); *United States v. Head*, 340 F.3d 628, 630–31 (8th Cir. 2003); *United States v. Shaker*, 279 F.3d 494, 495–98 (7th Cir. 2002) ("I am deferring my decision on acceptance or rejection of your guilty plea and your Plea Agreement until after I've had an opportunity to study the Presentence Report. If your plea of guilty and your Plea Agreement are then accepted, I will so advise you."); *see also Arafat*, 789 F.3d at 845 (interpreting *Tyerman* and *Head* to allow withdrawal when "express language" indicated that it had not been accepted).

*United States v. Andrews*, 857 F.3d at 740 (plea hearing in which the district court did not use "provisional" language, and explicitly stated that "[n]ormally at this time I would go ahead and accept the plea and make a finding of guilty," but did not do so pending inspection of the presentence report).

In *Shaker,* for example, the district court did not accept the guilty plea "provisionally" or "conditionally"; indeed, it did not accept the plea at all. Rather, the court carefully and explicitly stated that it was deferring its decision whether to accept *both* the plea agreement *and* the guilty plea itself:

> I am deferring my decision on acceptance or rejection of your plea of guilty *and* your Plea Agreement until after I've had an opportunity to study the Presentence Report. If your plea of guilty *and* your Plea Agreement are then accepted, I will so advise you.

279 F.3d at 496 (emphasis added). *Tyerman, supra,* is similar in that the court explicitly stated, "I'm going to put off accepting your plea" pending review of the presentence report, and did not make the required Rule 11(b) findings as to voluntariness. 641 F.3d at 938.

*Byrum* thus found non-acceptance cases, such as *Shaker* and *Head,* to be distinguishable from conditional-acceptance cases, such as *Battle* and *Jones*:

> In both *Battle* and *Jones,* the district court had *conditionally* accepted the defendant's guilty plea and *only* deferred accepting the terms of the underlying plea agreements, whereas in *Shaker* and *Head,* the district court had *deferred* accepting the guilty plea itself.

*Byrum,* 567 F.3d at 1261.[13]

In both *Byrum* and *Battle, supra,* the Court of Appeals acknowledged that the district court could have been clearer about what it meant by "provisional" acceptance. *See Byrum,* 567 at 1261 ("While we prefer linguistic precision . . ."); *Battle,* 499 F.3d at 322 ("[T]here is little doubt that an unambiguous acceptance (e.g., 'I accept your guilty plea') would have avoided the problems

---

[13]    This distinction is not indicative of a Circuit split. Indeed, in *United States v. Arafat,* 789 F.3d 839 (8th Cir. 2015), the Eighth Circuit reviewed its own holdings in *Head* and *Tyerman,* distinguished them, and found that a district court had "implicitly" accepted a guilty plea. Although the district court did not state in so many words that the plea was accepted, it conducted the entire Rule 11(b) colloquy and told the defendant it was deferring acceptance of the plea agreement pending review of the presentence report. *Id.* at 842. The law in the Eighth Circuit, as stated in *Arafat,* is entirely consistent with that of *Byrum* and *Battle,* which it cited. *Id.* at 844.

encountered here."). Both nevertheless held that the district court's "provisional" or "conditional" acceptance of the plea was clear enough. In *Byrum, Battle,* and *Jones,* the district court did not, as it did in *Shaker, Andrews,* and *Tyerman,* explicitly state that it was, despite the Rule 11(b) plea colloquy, *not* currently accepting the plea agreement. Thus the courts in *Byrum, Battle,* and *Jones* found that the district court's "provisional" acceptance of the plea constituted sufficient acceptance for purposes of a motion for plea withdrawal.

### C. Application of "Acceptance" Standards to Mr. Feliz's Case

Mr. Feliz asserts that his Rule 11(c)(1)(C) guilty pleas were accepted only "provisionally," not finally. Therefore, he argues, they were not truly "accepted" for purposes of Rule 11(d), and he may withdraw them as a matter of right. I do not agree. This defendant, duly advised of his rights in accordance with Rule 11(b), waived those rights and admitted guilt under oath. He was literally and expressly "adjudged guilty" of the charged offenses. The Court's acceptance of the plea was "provisional" only in the sense that the defendant could withdraw it if *the Court* later rejected the stipulated sentence in the plea agreement. Thus Mr. Feliz's pleas in both the drug and wire fraud cases fall on the *Byrum/Battle/Jones* ("conditional acceptance"), not the *Shaker/Tyerman/Andrews* ("non-acceptance"), side of the line. These guilty pleas were accepted.

Three principles emerge from the Court of Appeals case law discussed in the preceding section:

(1) A regular Rule 11(b) plea colloquy creates a "presumption" that the guilty plea (as opposed to the plea agreement) has been accepted.

(2) The court's acceptance of a plea "provisionally" or "conditionally" constitutes "acceptance" sufficient to trigger the "fair and just" standard for withdrawal.

(3) Although some imprecision will be tolerated, the presumption of
acceptance can nevertheless be overcome if the court "explicitly
defer[s]" acceptance of the guilty plea itself in "express language."
I apply those principles here.

### 1. Rule 11(b) plea colloquy

A guilty plea may be accepted, even if acceptance of the plea agreement
(in particular, the sentence stipulated in the plea agreement) is deferred. *See
Hyde, supra.* In both the drug case and the wire fraud case, this Court
conducted a full guilty plea colloquy in conformity with Rule 11(b). This is not
contested.

The Court ensured that the defendant's decision to plead guilty was
voluntary and intentional, and that he waived his rights with full advice and
knowledge. A full factual basis for the plea was obtained from the defendant,
who admitted that he intentionally committed the acts constituting the charged
offenses. In each case, the Court warned the defendant that he should not
plead guilty unless he was guilty in fact. The defendant repeatedly
acknowledged, explicitly and under oath, that he was pleading guilty because
he was guilty in fact. The Court made the necessary factual findings that the
defendant understood all of the necessary advice under Fed. R. Crim. P.
11(b)((1)(A)–(O), that the plea was voluntary, *id.* 11(b)(2), and that it had a
factual basis, *id.* 11(b)(3).

In each case the defendant was "adjudged guilty" of the charged offenses.
Thus, in the drug case, the Court stated as follows: "Accordingly, the
defendants' plea of guilty is accepted, and the defendant is adjudged guilty of
Count One, conspiracy to violate 21 U.S.C. Section 846." GPD Tr. 39:7. In the
wire fraud case, the Court found similarly that "the defendant is adjudged
guilty of the [wire fraud and tax] offenses." (GPW Tr. 42)

Under the principles established in the Court of Appeals case law cited
above, that regularly-conducted Rule 11(b) colloquy, including the defendant's
admission of guilt under oath, gave rise to a presumption that the guilty plea

was accepted and could be withdrawn only for sufficient cause. *See Battle*, 499 F.3d at 321–22; *see also Byrum*, 567 F.3d at 1260–61; *Arafat*, 789 F.3d at 844–45; *Andrews*, 857 F.3d at 740.

### 2. *"Provisional" acceptance of the guilty plea*.

The next issue is whether the Court "provisionally" or "conditionally" accepted the guilty plea.

In the drug case, the Court's operative statement, following its entry of the necessary factual findings, was that the plea was "accepted":

> THE COURT: . . . . Accordingly, the defendants' plea of guilty is accepted, and the defendant is adjudged guilty of Count One, conspiracy to violate 21 U.S.C. Section 846. (GPD Tr. 39:7)

To be sure, the Court also employed the terminology of "provisional" acceptance. In doing so, the Court clearly indicated that it was referring to the defendant's right to withdraw under Rule 11(c)(1)(C) if the Court did not accept the stipulated sentence:

> THE COURT: I will accept the plea provisionally, that is for an 11(c) plea. I guess, it doesn't really occur until sentencing day. Provisionally, I accept the plea. And assuming that I find the sentence more than 120 months [to] be appropriate, I will finally accept it on sentencing day. Provisionally I accept it, and I'll make the following findings. . . . (GPD Tr. 38:8)

> THE COURT: . . . . And I just want to, as an aside to counsel for the Government, please just remind me on sentencing day to place on the record my acceptance -- my final acceptance of the guilty plea, assuming that occurs and [a] sentence [of] 120 months is imposed. That's just an I we have to dot. (GPD Tr. 39:13)

In the wire fraud case, the court provisionally accepted the plea, again stating clearly that by "provisional," it meant that its acceptance was subject to the right to withdraw under Rule 11(c):

> THE COURT: ...

> Okay. Then I am going to accept his plea.

> But as I do for an 11(c) plea, I want to make something clear, which is my acceptance of the plea is provisional; that is, I am

going to read the presentence report and decide whether, ultimately, whether the 48-month consecutive sentence is an appropriate one. If I agree that it is an appropriate one, I will then finally accept the plea on the sentencing date.

So I wanted to ask the Government counsel to remind me to make that acceptance final on sentencing day. It's a slight glitch in the procedure as a result of the 11(c) nature of the plea.

MR. URBANO: Yes, Your Honor.

THE COURT: But I do provisionally accept the plea, and I find that the allocution to be adequate. Any nonacceptance would be simply based on sentencing reasons and the 11(c), not any flaw in the plea.

(GPW Tr. 40–41) After making the necessary factual findings, the Court repeated that "the defendant's plea of guilty is accepted provisionally." The Court formally adjudged the defendant guilty of the wire fraud and tax evasion offenses. (*Id.*)

In both cases, then, the Court employed the "provisional" language found sufficient to constitute acceptance in the case law.

### 3. *Explicit non-acceptance or deferral of acceptance*

As noted above, a reviewing court will nevertheless consider whether any other statements by the court were sufficiently explicit, in context, to rebut the presumption of acceptance of the guilty plea. Nothing about the context here, I find, rebuts that presumption of acceptance.

As set forth above, the Court in the drug case stated specifically that the guilty plea was "accepted," and also repeatedly used the "provisional" language found sufficient by the Court of Appeals cases cited above. And the Court explained what that meant in the context of a Rule 11(c)(1)(C) plea agreement. As the Court repeatedly stated in the drug case, the "provisional" acceptance of the plea meant that the defendant would not be bound *if* the Court rejected the plea agreement's stipulated sentence of 120 months. Provisional acceptance, the Court explained, was a "glitch" inherent in an 11(c) plea agreement, or a

letter i that "we have to dot" on sentencing day. In the wire fraud plea, the Court's statements were, if anything, even clearer. *See* Section II.C.2, *supra*.

The "provisional" acceptance of the plea, then, had an obvious and clear meaning. The defendant repeatedly admitted that he was guilty in fact, and allocuted to the essentials of these offenses under oath. Nor was an adjudication of guilt withheld pending further proceedings; in both cases, the defendant was "adjudged guilty" of the offenses. No defendant, having undergone that proceeding, could have walked away with the impression that the ball was in his court—*i.e.,* that he could unilaterally take back his counseled, thoroughly negotiated, sworn admission of guilt. *See Byrum,* 567 F.3d at 1261 ("At the conclusion of the colloquy, the defendant has admitted his guilt and the facts relating to his criminal conduct. He has also been advised by the court of the consequences of pleading guilty. After a such a colloquy, a defendant has no reason to believe he can freely withdraw his plea.") Rather, the right to withdraw would be triggered only by the Court's decision to reject the stipulated sentence.

The Court's "provisional" acceptance language was at least as clear as that which was found to constitute acceptance of a plea in the Court of Appeals cases cited above. In *Byrum,* for example, the district court somewhat contradictorily stated that "*I am not going to accept the plea until I review the presentence report* and am satisfied . . . that the plea agreement in this case does not undermine the goals of the sentencing guidelines. *I will accept it provisionally subject to that review.*" 567 F.3d at 1263 (emphasis added). Likewise, in *Battle,* the district judge initially stated that "the court will defer final acceptance of the plea agreement *and* the adjudication of guilt until we've all had an opportunity to review that report," but in a second order it declared the defendant "provisionally guilty." 499 F.3d at 318. In both cases, the Courts of Appeals observed that the district courts could have spoken more clearly; nevertheless, their provisional acceptance of the guilty pleas was clear enough.

This is, if anything, an *a fortiori* case. Nowhere in Mr. Feliz's drug or wiretap plea transcript does this Court state that it is not going to accept the plea, or that it is delaying an adjudication of guilt. On the contrary, the Court at all times stated that it was provisionally accepting the plea and that the defendant was contemporaneously being adjudicated guilty of the offenses.

Still less does the Court's language in Mr. Feliz's case approach the "explicit" and "express" language of deferral that established non-acceptance of the plea in, *e.g., Shaker* and *Tyerman*. In *Shaker,* for example, the court expressly stated, "I am deferring my decision on acceptance or rejection of your guilty plea *and* your Plea Agreement until after I've had an opportunity to study the Presentence Report." 279 F.3d at 496 (emphasis added). In *Tyerman*, the district court likewise explicitly stated that it was *not* accepting the plea, pending review of the presentence report. 641 F.3d at 938.

There is no such explicit disavowal in Mr. Feliz's case. The Court's "provisional" acceptance of the guilty plea must be taken to mean what the Court said it meant: that the plea was accepted subject to withdrawal if the Court, pursuant to Rule 11(c)(1)(C), should later reject the stipulated sentence. That possibility, conditioned on future actions of the Court (not the defendant), does not detract from the plea's finality for purposes of triggering the Rule 11(d) "fair and just reason" standard for withdrawal.

In both the drug case and the wire fraud case, the guilty plea was accepted. I therefore reject the argument that the defendant may withdraw his plea without proffering a fair and just reason for doing so.

### III.    MOTION TO WITHDRAW GUILTY PLEA

Mr. Feliz's motions to withdraw his pleas of guilty are thus properly considered under the post-acceptance, "fair and just reason" standard of Fed. R. Crim. P. 11(d)(2)(B). As noted above, that standard is informed by the following three factors:

(1) whether the defendant asserts his innocence;

(2) the strength of the defendant's reasons for withdrawing the plea; and

(3) whether the government would be prejudiced by the withdrawal. *Jones*, 336 F.3d at 252 (line breaks added). *See* Section II.A.3, *supra*, and additional cases cited.

### 1. Whether Defendant Asserts His Innocence

The first factor is whether the defendant asserts his innocence. "Innocence" in this context means factual, not legal, innocence. *See United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001) ("In assessing a defendant's claim of 'legal innocence' for purposes of withdrawal of a guilty plea, we must first examine whether the defendant has asserted his or her factual innocence."); *see also United States v. Cox*, 553 F. App'x 123, 127 (3d Cir. 2014) (affirming district court's denial of defendant's motion to withdraw plea because defendant "failed to state affirmatively his innocence, present facts to support such an assertion, or explain why he admitted, during the earlier plea colloquy" that he committed the crime); *United States v. Kenley*, 299 F. App'x 184, 186 (3d Cir. 2008) (holding that "a defendant must first assert factual innocence"); *United States v. Monac*, 120 Fed. Appx. 924, 927 (3d Cir. 2005) ("[E]ven if he could prove 'legal innocence' . . . an assertion of 'legal innocence' is insufficient to justify the withdrawal of a guilty plea; proof of factual innocence is required.") (emphasis in original).

That inquiry does not stop at the defendant's mere "assertion" of innocence. The Court may assess "'[t]he good faith, credibility and weight of a defendant's assertions . . . in support of a motion under Rule 32(d). . . .'"[14] *Gov't of the Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) (quoting *United States v. Washington*, 341 F.2d 277, 281 (3d Cir. 1965)). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Wilson*, 429 F.3d at 458 (internal citation and quotation marks omitted). Further, a defendant must "give sufficient reasons to explain why

---

[14]    *See* n.9, *supra* (substance of Rule 32 plea-withdrawal standards moved to current Rule 11(d) in 2002).

contradictory positions were taken before the district court." *Siddons*, 660 F.3d at 703 (quoting *Jones*, 336 F.3d at 253).

Thus Mr. Feliz owes the court an explanation of why, if he was not guilty, he stated under oath at both of his guilty plea hearings that he was guilty. A plea of guilty is a fully-warned, in-court statement under oath, not a strategic stopgap. A defendant who wishes to withdraw a plea of guilty must "give sufficient reasons to explain why contradictory positions were taken before the district court." *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011); *United States v. Jones*, 336 F.3d 245, 253 (3d Cir. 2003). One such sufficient reason might be that the transcript "indicates [defendant] does not fully understand that the facts he is prepared to admit constitute the offense charged." *United States v. Young*, 424 F.2d 1276, 1279 (3d Cir. 1970). No such claim is made, or could be made, in this case; Mr. Feliz acknowledged that he understood the charges, and the facts admitted by him are blatantly criminal in nature.

I have reviewed the motion papers, as well as Mr. Feliz's pro se letters to the Court. In them, I find no cognizable claim of actual innocence of these offenses, and no alternative explanation for these admissions under oath. The theme that runs through all of these submissions is simply that Mr. Feliz believes he could strike a better deal under current sentencing law (and, as a bonus, possibly take advantage of the passage of time to bar reinstatement of the wire fraud charges). *See* Section III.2, *infra*.

In short, even taking Mr. Feliz's change of position at face value, I see no adequate explanation for his prior statements under oath that he was factually guilty of all elements of the offenses. *See United States v. Jones*, 336 F.3d 245, 253 (3d Cir. 2003) (affirming denial of motion to withdraw guilty plea where defendant "listened to the Government's recitation of the material facts underlying his offenses and conceded the accuracy of those facts [during the plea colloquy] . . . then denied those facts at the May 22 hearing, but did not explain why his position had changed so markedly."); *United States v. Graulich*,

524 F. App'x 802, 806 (3d Cir. 2013) ("Rather than attempting to explain why contradictory positions were taken in the District Court, Graulich claims innocence by arguing that he never had the intent to defraud. This argument is belied by Graulich's plea colloquy, which shows that he admitted to having the requisite intent.").

Even if there were a post-plea assertion of innocence, the lack of any sufficient explanation for Mr. Feliz's plea of guilty would fatally undermine its credibility. *See United States v. Mejia*, 222 F. App'x 136, 139–40 (3d Cir. 2007) (affirming denial of withdrawal motion where, although defendant asserted innocence, his present assertions were "inconsisten[t]" and "lack[ing] credibility" because he failed to sufficiently explain why he "thoroughly admitted his guilt and did not contest the Government's characterization of the facts" during plea). In such a case, courts have repeatedly upheld denials of motions to withdraw pleas of guilty. *See United States v. Self*, 393 F. App'x. 47, 50 (4th Cir. 2010) (affirming denial of motion to withdraw guilty plea based on claim of public authority defense because defendant gave extensive statements of his guilt); *United States v. Martinez*, 785 F.2d 111, 115 (3d Cir. 1986) (affirming denial where Defendant admitted factual guilt during plea and then later claimed he "never knowingly admitted occupying the position of an organizer. . . in a continuing criminal enterprise."); *United States v. Baird*, 542 F. App'x 149, 151 (3d Cir. 2013) (affirming denial where defendant moved to withdraw plea because he allegedly lacked the requisite intent, but "offered nothing to explain the contradictory position he took during the plea colloquy.").

At any rate, however, there is no claim of factual innocence as that term is properly understood. The law is clear that a late-emerging dispute over sentencing factors does not equate to a showing of factual innocence. *See, e.g., United States v. Martinez*, 785 F.2d 111, 115 (3d Cir. 1986) (concluding defendant's assertion of innocence was not "compelling" because the defendant did not deny his involvement in the drug distribution offense but only

contested his role in the offense); *United States v. Garba*, 285 F. Supp.2d 504, 509–10 (D.N.J. 2003) (holding defendant, who only disputed the weight of the illegal drug but not his role in the drug distribution conspiracy, failed to make a colorable claim of innocence).

In sum, I do not perceive that Mr. Feliz is truly claiming innocence at all. But to the extent he is, I would find any such assertion to be lacking in indicia of "good faith, credibility and weight." *Gov't of the Virgin Islands v. Berry*, 631 F.2d at 220. The assertion-of-innocence factor, then, weighs heavily against granting Mr. Feliz's motion.

### 2. Strength of Defendant's Reasons for Withdrawal

The second, and related, factor is the defendant's explanation of "why he changed his mind following his guilty plea." *United States v. King*, 604 F.3d 125, 140 (3d Cir. 2010). It is not enough, post-plea, to proffer a defense to the charges; "There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) (quoting *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975)). Nor will a court allow withdrawal merely based on a "shift in defense tactics, a change of mind, or the fear of punishment." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (quoting *Jones*, 979 F.2d at 318). A defendant's reason for withdrawing his plea must rise above the "belie[f] he made a bad choice in pleading guilty," *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010); a "change of heart," *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987); or "[p]ost-plea regrets," *United States v. Stuttley*, 103 F.3d 684, 686 (8th Cir. 1996).

The presentations of counsel—written and at oral argument—rested primarily on the contention that the pleas had not been accepted, an argument which I have already rejected. I therefore turn to the reasons that have been proffered. I focus primarily, though not entirely, on the arguments of counsel; as I have cautioned the defendant, the Court does not recognize hybrid

counseled/*pro se* status. Moreover, the minimal demands of orderly procedure require the Court to consider actual motions—not contentions trickled out one at a time in multiple letters. Nevertheless, I have reviewed those letters, and I deal briefly with the major contentions therein.[15]

Counsel (14-327 DE 159), and Mr. Feliz, in his initial letter (14-327 DE 156), cite the recently-enacted First Step Act as the reason for seeking withdrawal of the plea in the drug case. The 2015 enhanced penalty information, Feliz states, while valid at the time, was based on a prior conviction that lay outside the 15-year lookback period that would now apply under the First Step Act. (*See* n.5, *supra*; 14-327 DE 167 at 2) That enhanced penalty information, however, was withdrawn as part of the plea. Counsel did not err in negotiating away an enhancement which, under then-current law, would have doubled the mandatory minimum.

Counsel adds that Section 402 of the First Step Act authorizes the expansion of the availability of the U.S.S.G. § 5C1.2 "safety valve," so that Mr. Feliz, even with up to four criminal history points, could be eligible for relief from the ten-year mandatory minimum on the drug charges.[16] That would also require, however, that he meet the other four requirements of § 5C1.2. That is an argument he may make at sentencing, but it does not undermine the

---

[15]    There are duplicate filings of certain of the letters in both cases. I have not parallel-cited them.

[16]    The safety valve, U.S.S.G. § 5C1.2, does not apply to a defendant who has more than one criminal history point. Section 402 of the First Step Act authorized, *inter alia,* an increase of that limit to 4 points. The Guidelines have not yet been amended, however. The government has adopted a policy of consenting to an equivalent variance in cases where the new version of the safety valve, if duly adopted, would apply.

If the wire fraud case were sentenced first, and separately, it would constitute prior criminal history for the drug case, and would add 3 points. *See* U.S.S.G. § 4A1.1(a). If so, Mr. Feliz would be ineligible for the safety valve even under the First Step Act standards. If the drug case were sentenced first, and separately, Mr. Feliz would have 2 criminal history points (the prior drug conviction would be too old to count), and he would be eligible for the safety valve reduction under the First Step Act. *See also* pp. 15–16 & nn. 5–6, supra.

fairness of his plea agreement, which was negotiated in the legal environment that then applied.

Mr. Feliz believes that without the threat of the enhanced penalty or with the availability of the safety valve, he might have negotiated a better deal. The deal he did negotiate, however, accurately reflected then-current law. Such retrospective strategic considerations—particularly where the enhanced penalty information was dismissed in any event—carry limited weight. I observe also that this defendant, by design, received the same plea deal as his co-defendants, who have made no such arguments.

More generally, a dispute as to sentencing factors is not a claim of innocence and will not furnish a basis for withdrawal of a plea. *See Garba, supra; Martinez, supra.* Mr. Feliz cites unanticipated changes in sentencing law. He remains free, however, to argue at the sentencing hearing that the court should apply those factors. Those arguments may or may not succeed. If they did succeed, and the court did impose a sentence lower than the one stipulated, then the government could opt to vacate the plea. In that case, the defendant will have attained the plea withdrawal he seeks; if not, he will have attained the lower sentencing range for which he argues. But these considerations are not central to the appropriateness, or not, of the withdrawal of the guilty plea itself.

Mr. Feliz's letter states that the drug plea was not voluntary because it was a package deal of all three defendants, and he says that he felt pressured into entering it. The Court directly addressed that aspect of the plea on the record. The Court carefully elicited the acknowledgement of Mr. Feliz and his counsel that this plea represented his individual, counseled, uncoerced decision. (*See* pp. 4–5, *supra*; GPD Tr. 24–27)

As for the wire fraud case, the defendant claims that the AUSA was required, not merely to summarize the stipulations in Schedule A of the plea agreement, but to read them into the record. Failure to do so, he argues, violated the requirement of Rule 11(c)(2) that the plea agreement be disclosed in open court, and deprived him of the opportunity to "dispute" the

42

stipulations. (14-327 DE 167 at 2) The plea agreement, including the stipulations, was signed and agreed to by Feliz; it was disclosed in open court; Feliz acknowledged reading, signing, and understanding it; Feliz personally acknowledged that the AUSA had accurately summarized it; and the original was placed in the Court's file. (GPW Tr. 11 & *passim*; 15-421 DE 64)

Also in connection with the wire fraud case, the defendant claims that the plea allocution did not include the "knowing and intentional" element of wire fraud. (14-327 DE 174) But it did:

> MR. URBANO: In conclusion, did you take all of the above actions knowingly and intentionally?
>
> THE DEFENDANT: Yes.

(GPW Tr. 37:19)[17]

In sum, I find that Mr. Feliz has not established a sufficient reason for withdrawing either plea.

### 3. *Prejudice to the Government*

The third factor, though perhaps the least important one, is potential prejudice to the Government if the plea were to be withdrawn.

One form of prejudice is, of course, the simple passage of time. The underlying events occurred as long as eleven years ago, in 2008. The government would be forced, years after entry of the plea, to reassemble its evidence and witnesses, assuming they remain available. No misconduct by the government is alleged in connection with the plea. It is prejudicial to saddle it with the burden of reconstituting a case it was prepared to try years ago.

---

[17]    The defendant claims that because his wire fraud plea must be vacated, his consent to waive indictment is likewise invalid; that the criminal information must be dismissed; and that re-charging of the wire fraud charges would now be barred by the statute of limitations. (DE 179) Because I am not vacating the plea, I do not reach this argument.

More broadly, Mr. Feliz's *pro se* arguments in favor of plea withdrawal at times seem to contemplate that the result will be a new plea and a recalculation of his sentence, in which he retains the advantageous portions of the old plea while reaping certain new benefits. The government, however, would not be obligated to offer him a new plea deal at all.

A second form of prejudice, specific to the drug case, relates to the package-deal plea. Each of the pleas was dependent on the others. That was the defendants' proposal; the Court accepted it; and all three defendants were carefully warned that this was the case. Now, years later, having derailed the prosecutorial train, one of the three defendants seeks to retract his sworn admissions and extricate himself from the deal he made.

Finally, one defendant in the drug case, Robert Crawford, has already received the benefit of the plea. He was sentenced on July 2, 2015, to 120 months' imprisonment in accordance with the package plea agreement. (DE 152) That situation, too, renders Feliz's withdrawal inequitable vis-à-vis the government.

For all of these reasons, the prejudice factor, like the other two, weighs against withdrawal of the plea.

Mr. Feliz's motions to withdraw the guilty pleas in the drug and wire fraud cases are denied.

## IV.   PROCEDURE FOR SENTENCING

All of that said, the fact remains that the Court, even when faced by a stipulated sentence, is obligated to accurately calculate the applicable range of sentences under the Sentencing Guidelines. In the peculiar context of this plea, I find that such a calculation will not be accurate or fair to the defendant unless I calculate the sentencing ranges separately for the drug and wire fraud offenses of conviction.

The drug and wire fraud charges were brought as separate cases, would probably not properly be joined in a single indictment, and were subject to separate plea agreements. Moreover, certain Guidelines factors (e.g., criminal history), would apply differently to the two sets of charges if considered separately. Most pertinently, the defendant objects that he wishes to argue for the applicability of the safety valve under the First Step Act (fully understanding, of course, that the government might opt to void the plea agreement if such an application were accepted). I take no position as to whether such an application would be granted. I do perceive, however, that

manipulation of the order of these sentencings, and their consolidation (or not) pursuant to the multiple-count rules, might (or might not) prejudice the defendant's position on grounds that are procedural and arbitrary. *See* nn. 5, 6, & 16, *supra.* I will therefore direct the preparation of two separate presentence reports—one for the drug case, and the other for the wire fraud case—in which guidelines for each are calculated separately.

## V. CONCLUSION

I conclude as follows. The pleas were accepted, and withdrawal is therefore analyzed under the "fair and just reason" standard. Under that standard, I have analyzed the relevant factors: the defendant's assertion of innocence, the strength of the defendant's reasons for withdrawing the plea, and prejudice to the Government. I find that the defendant's assertion of innocence is absent; that his reasons for withdrawing the plea are weak and suspect, as they are primarily strategic in relation to sentencing; and that the prejudice to the government would be real.

## ORDER

For the reasons stated above,

IT IS this 3d day of December, 2019

ORDERED that Mr. Feliz's motions to withdraw his pleas of guilty in the drug and wire fraud cases are DENIED; and it is further

ORDERED that the Probation Office to prepare separate presentence reports for the drug case and the wire fraud case.

**Hon. Kevin McNulty**
**United States District Judge**