UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MELVIN FELIZ,<br><br>                Defendant. | Crim. No. 15-421 (KM)<br><br>MEMORANDUM OPINION<br>(DE 117, 126 and Restitution) |

Mr. Feliz has pled guilty and been sentenced to 120 months' imprisonment in Crim. No. 14-327 (the "drug case") and to 48 months' imprisonment in the above-captioned case (the "fraud case"). Both sentences of imprisonment were agreed upon by the parties pursuant to guilty plea agreements under Fed. R. Crim. P. 11(c)(1)(C). In the fraud case, the parties agreed to entry of a judgment of forfeiture, but the guilty plea agreement did not include a restitution figure.

I write this Memorandum Opinion to tie up three loose ends in the fraud case:

1) Motion *pro se* for reconsideration of judgment pursuant to Rule 59(e) (DE 117);
2) Motion *pro se* for return of property (DE 126);
3) The parties' counseled submissions regarding the proper amount of restitution (sentencing submissions noted at DE 127, 128).

**1. Motion for reconsideration**

Mr. Feliz has filed a *pro se* motion[1] for reconsideration of his sentence

---

[1] The Court, primarily in the drug case, has admonished Mr. Feliz that motions should be filed through counsel. In the drug case, I appointed Patrick Joyce, Esq., who was already Mr. Feliz's appointed appellate counsel, to deal with post-judgment matters. Mr. Joyce, as a condition of acceptance of the appointment, stated that he would make his own strategic decisions and would not necessarily adopt prior *pro se* submissions of the defendant. The Court agreed,

1

pursuant to Fed. R. Civ. P. 59(e). (DE 117)

While Civil Rule 59(e) standards have been borrowed for motions for reconsideration in the course of a criminal case, Rule 59(e) is not appropriately applied to expand the bases for review or reconsideration of a criminal sentence. *See United States v. Renteria*, No. 04-20115-JWL-20, 2006 WL 3544877, at *2 (D. Kan. Dec. 8, 2006). Particularly in the *pro se* context, however, the Court may consider the motion if it would have been properly made on some other basis, such as 18 U.S.C. § 3582(c) or Fed. R. Crim. P. 35.

The short answer, for purposes of this fraud case, is that it does not matter. The motion must be rejected because, although it is filed in both of the criminal cases, it does not seek any relief that is addressed to, or could be awarded in relation to, the sentence in this, the fraud case.

First, Mr. Feliz argues that he is entitled to relief based on the expansion of the grounds for a "safety valve" reduction and relief from mandatory minimum sentences under U.S.S.G. § 5C1.2. His argument, however, is entirely directed to the sentence in the drug case.

Second, Mr. Feliz argues that his 10-year sentence in the drug case (part of a "package deal" with two codefendants in that case) is unfair because one of those defendants received a reduction of sentence based on investigative cooperation, pursuant to U.S.S.G. § 5K1.1. Again, this argument is directed to the sentence in the drug case, and apparently is being pursued there.

In this, the fraud case, the Rule 59(e) motion is denied because it is not directed at the fraud sentence.[2]

---

and, as relevant here, administratively terminated the parallel Rule 59(e) motion that Mr. Feliz filed in the drug case.

Here, in the fraud case, the situation is somewhat different. Mr. Feliz's counsel has neither adopted nor rejected Mr. Feliz's *pro se* motions. The counseled submissions regarding restitution remain pending. Out of caution, I will (as I have done in the past) address Mr. Feliz's *pro se* post-judgment submissions, although I am not obligated to do so.

[2]   Should Mr. Feliz's arguments prevail with respect to his sentence in the drug case, the prosecution and the Court might be required to contend, on remand, with a disruption of the overall sentencing plan (i.e., a total sentence of

2

## 2. Motion for return of property

Mr. Feliz has filed a *pro se* motion (DE 126) under Fed. R. Crim. P. 41(e) for return of property: three cell phones seized at the time of arrest and a passport surrendered as a condition of bail (which was later revoked). At the end of the sentencing proceedings on November 6, 2020, counsel for Mr. Feliz raised the issue of the return of the property. The Assistant U.S. Attorney, understandably, stated that he was hearing this request for the first time, and asked for time to consult with the investigating agents. I directed both counsel, who had been reasonable and professional throughout, to work it out. (*See* DE 21, Sentencing Tr. 86) I have no indication that this has occurred. The government's only response to the motion for return of property is that it should not be considered because the motion was filed *pro se*. Although the property was impounded for good and sufficient reasons, I see no sound basis for the government to retain it now.

The passport was surrendered in connection with the posting of bail, which was revoked long ago. Should it have any evidentiary value, the government may photograph it. As the defendant is incarcerated, there is no possibility of the passport's being misused. In any future situation in which the defendant's travel is restricted, presumably the passport, if still valid, could be surrendered again.

The cell phones, by their nature, may contain evidentiary material, which the government may properly retain pending the outcome of appeals. Mr. Feliz has repeatedly stated his intent to vacate his pleas. I therefore will not require that these evidentiary items be returned. Should the government wish voluntarily to return them, however, they may image or download pertinent information and require as a condition of return that the defense enter into a stipulation as to authenticity or chain of custody.

---

168 months in the drug and fraud cases). As noted elsewhere, that task might itself be substantially disrupted by the requirement of the Rule 11(c)(1)(C) pleas that a sentence in excess of the agreed sentence would entitle Mr. Feliz to withdraw the plea.

The motion for return of property is granted as to the passport, but denied as to the cell phones.

### 3. Restitution amount

At sentencing, a dispute arose between the parties as to the proper amount of restitution. The government urges a figure of $7,897,143.00 (the "$7.8 million" figure); the defendant, a figure of $2,534,633.00 (the "$2.5 million" figure).[3] At sentencing, the parties suggested that an in-person evidentiary hearing as to the amount of restitution might be required; I reserved decision pending review of supplemental submissions, but agreed that such a hearing was a possibility.[4] The parties later filed their supplemental submissions in February 2020 (noted at DE 127, 128). The COVID-19 pandemic, and the suspension of in-person proceedings, intervened shortly thereafter. I now have reviewed the supplemental submissions, and have concluded that an in-person hearing is not required.

---

[3] The larger figure is based on the total loss from a fraudulent scheme that involved Mr. Feliz and his spouse, Ms. Keila Ravelo, who was separately charged in Crim. No. 15-576. The PSR in Mr. Feliz's case relates that one of the defrauded law firms paid a shell vendor $2,444,355, and the other paid a shell vendor $5,452,788, for a total of $7,897,143. (PSR ¶¶ 19-20)

Probation determined that restitution amounts for the wire fraud conspiracy were: (1) Hunton and Williams – $672,871; (2) Wilkie Farr & Gallagher - $526,832.75; and (3) Federal Insurance Company (who paid insurance claims to the two law firms) - $7,403.98. PSR ¶ 99. The government is not seeking additional amounts relating to the law firms' attorney's fees or losses arising after Mr. Feliz's guilty plea.

[4] The immediate impetus was a question as to whether Mr. Feliz would be designated to a federal institution immediately, or would prefer to remain at Essex County jail in anticipation of being produced for an in-person hearing on the proper restitution issue.

> THE COURT: . . . . I am not ruling at this time that we've got to have an in-person hearing. So that's kind of his lookout, but I wouldn't do it [*i.e.,* defer designation] if I were you, but it's up to you.
>
> . . . .
>
> THE COURT: If it's got to be in person, it's got to be in person, but I'm not making any kind of ruling on that yet.

Defense counsel then withdrew the request to delay designation. (DE 21, Sentencing Tr. 85–86)

Many factual issues typically contested are not contested here. Mr. Feliz does not dispute, for example, that the entire fraud scheme, running from 2008–2014, encompassed the $7.8 million figure. Indeed, he so stipulated in the plea agreement. And pursuant to the plea agreement, Mr. Feliz has entered into a consent judgment of forfeiture in the $7.8 million amount. (DE 65; *see also* plea agreement, DE 64 at 4–6, 10) He concedes that the consent judgment of forfeiture properly encompassed the full scope of the fraudulent conduct in 2008–2014. (Feliz supplemental submission, dated Jan. 29, 2021, at 8).[5]

Further, Mr. Feliz "does not dispute that he owes restitution." (*Id.* at 3) For purposes of restitution, however, Mr. Feliz argues that his exposure is less than the full forfeiture amount. The government, he says, has both formally stipulated and represented in court that, although the fraud scheme began in 2008, his involvement in the scheme ran only from January 2011–March 11, 2014. As a result, Mr. Feliz argues, he is legally responsible for restitution, not for the entire loss inflicted from 2008–2014, but only for the loss in the period 2011–2014. The parties agree factually (although they dispute the legal consequences) that the loss for that more limited, 2011–2014 period equals the $2.5 million figure.

The issue boils down to a legal one: Under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is the restitution amount, based on the offense of conviction, confined to the 2011–2014 period of Mr. Feliz's participation in the conspiracy?

I start with the wording of the MVRA. That statute does not invoke, for example, the Sentencing Guidelines concept of "relevant conduct." Rather, it is based on the "offense" of conviction:

(1) Notwithstanding any other provision of law, when sentencing

---

[5] The submission of Mr. Feliz's counsel contains a section titled "Restitution and forfeiture are not the same thing." In that section, he acknowledges that the agreed judgment of forfeiture under 18 U.S.C. § 981 was correctly based on the full $7.8 million amount. However, he contrasts that forfeiture standard with the restitution standards under MVRA, 18 U.S.C. § 3663A, which he depicts as far narrower. *See infra.*

5

a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1).

Now it is true that the statute, in its current form, invokes "scheme" or "conspiracy" offenses in the course of stating a broad definition of the term "victim":

a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).[6] That definition of a "victim," however, does not operate to expand the scope of the offense of conviction, or to extend the dollar amount of restitution to encompass conduct beyond the offense of conviction. While the range of eligible victims has been expanded, the offense of conviction continues to be the fountainhead of the restitution obligation.[7]

---

[6] There is a parallel definition under the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663(a)(2), as amended in 1990. For these purposes, the two are treated the same.

[7] The addition of a broadened definition of "victim" under the VWPA was essentially a reaction to the U.S. Supreme Court's holding in *Hughey v. United States*, 495 U.S. 411, 110 S. Ct. 1979 (1990). As described by the U.S. Court of Appeals for the Third Circuit, the amended definition of "victim" entails that "where a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y." *United States v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996).

As to the relevant underlying offense, as opposed to the eligible class of victims, the statute continues to focus on the *offense conduct of the defendant*:

[It] is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy, or pattern. Rather, in order for restitution to be permissible, the harm must "directly" result from the "criminal conduct" of the defendant. In this context,

6

Third Circuit law is clear on the point. "In sum, the 'offense of conviction,' as defined by *Hughey I*, remains the reference point for classifying conduct that determines liability for restitution. Although the amendment expanded the breadth of the definition of victims, the text did not extend the length of the period attributable to the offense of conviction." *United States v. Akande*, 200 F.3d 136, 141 (3d Cir. 1999). Thus *Akande* reversed an award of restitution to the extent it included two instances of credit card fraud that predated by more than one month the alleged "on or about" dates charged in the information to which the defendant pled guilty. 200 F.3d at 141–42. *Akande* found it appropriate to hold the government to the dates it had pled in the Information and never sought to amend.

---

> we interpret "direct" to require that the harm to the victim be closely related to the scheme, rather than tangentially linked. Further, we interpret "defendant's criminal conduct in the course of the scheme, conspiracy or pattern" to mean conduct that is both engaged in the furtherance of the scheme, conspiracy or pattern, and proscribed by the criminal statute the defendant was convicted of violating.

*Id.* As to that requirement of a direct connection to the offense of conviction, the courts have continued to apply the analysis of *Hughey. See United States v. Randle*, 324 F.3d 550, 556 (7th Cir. 2003) ("Thus, under *Hughey*, both the amount of the restitution award and the persons to whom such an award may be directed are limited by the circumstances of the offense for which the defendant has been *convicted*.") (emphasis in original). Thus *Randle* quoted with approval prior case law so limiting the scope of restitution:

> In *United States v. Braslawsky*, this Court applied the rule of *Hughey* and reversed a restitution order under the VWPA that included an amount of loss not directly attributable to the conduct for which the defendant was convicted. 951 F.2d 149, 152 (7th Cir.1991). Under this interpretation, charged but unconvicted conduct cannot form the basis for an award of restitution. In fact, in *United States v. Menza*, we noted that, under the VWPA, "Congress intended restitution to be precisely tied to the loss caused by the offence of conviction. Examination of the conduct constituting the commission of a crime only involves consideration of the conduct to which the defendant pled guilty and nothing else." 137 F.3d 533, 537 (7th Cir.1998) (citations omitted); *see also United States v. Scott*, 250 F.3d 550, 553 (7th Cir.2001) (noting that "relevant conduct" may not be the basis of a restitution award under the MVRA unless it is also "charged [convicted] conduct" or covered in a plea agreement).

*Randle,* 324 F.3d at 556.

7

For imposing the full $7.8 million amount, the government has two chief arguments:

First, the government argues that the "offense of conviction" actually did encompass the full date range, 2008–2014. Its best evidence is the criminal Information to which Mr. Feliz pled guilty:

> From at least as early as in or about 2008 through in or about July 2014, in the District of New Jersey and elsewhere, the defendant, MELVIN FELIZ, did knowingly and intentionally conspire and agree with Ravelo and others to devise a scheme and artifice to defraud Law Firm 1, Law Firm 2 and Client 1, . . . . contrary to Title 18, United States Code, Section 1343.

(Information, DE 60 (charging mail fraud conspiracy, 18 U.S.C. § 1349)). Unlike an indictment, however, a felony criminal information is not supported by a grand jury finding of probable cause (let alone a jury finding of guilt). Indeed, a felony information is valid only to the extent the defendant himself has waived his right to indictment.

Although *Akande* dealt with a distinct issue, I am guided by its approach here. Noting that "the conviction here was the result of a plea bargain rather than the product of a jury verdict," *Akande* measured the elasticity of the criminal information's "on or about" date language in relation to the "plea agreement and colloquy." 200 F.3d at 142. In contrast with *Akande,* here it is the *government* which is trying to bind *the defendant* to the government's own drafting choices in the Information. Thus there is additional reason to scrutinize the scope of the defendant's plea.

The Information itself is imprecise, perhaps unavoidably so, as to the date the offense began. It charges that the conspiracy began "at least as early as in or about 2008," and that it involved Mr. Feliz, Ms. Ravelo, "and others."

At the guilty plea hearing, Mr. Feliz did answer affirmatively when asked "*From as early as* 2008[8] through in or about July 2014, did a conspiracy exist" to defraud two law firms. (Guilty plea Tr. 34, DE 82; emphasis added). Feliz

---

[8] Not "at least as early as," the language of the Information.

admitted to "becom[ing] a member" of the conspiracy and performing certain acts "during the time of" the conspiracy. *Id.* As to precise dates, however, the colloquy remained general.

More specific, however, is Schedule A of Mr. Feliz's plea agreement, containing the parties' factual stipulations. There, the parties stipulate that "[f]rom in or about *January 2011* through on or about March 11, 2014, Melvin Feliz and co-defendant [*sic*] Keila Ravelo knowingly and intentionally conspired and agreed to commit wire fraud." (DE 64 at 10; emphasis added).[9]

Thus far, then, there is a certain amount of vagueness, and a seeming contradiction between the plea colloquy and the plea agreement. At the sentencing hearing, at which the Court finally accepted the 11(c)(1)(C) plea agreement, the binding effect of the stipulation in the plea agreement came clearer.

At the sentencing hearing, the issue of the date range of the offense again arose, albeit in a separate context. The issue was whether a prior sentence, ending in 1995, was served "within fifteen years of the defendant's commencement of the instant [fraud] offense." U.S.S.G. § 4A1.2(e). If the fraud offense began in 2008, the prior conviction would add 3 criminal history points; if 2011, not.[10] The government properly adhered to the stipulation in the plea agreement, acknowledged that the Feliz fraud offense commenced in 2011, and agreed that 3 points would not be added for the prior conviction. That acknowledgement, which the government commendably crafted to remain within the confines of the plea agreement, was clear:

> [AUSA] KOGAN: . . . Your Honor, you're going to probably hear me say this a couple times during this hearing today, the government wants to be clear it is seeking to abide by the plea agreement . . . .

---

[9] The total amount of the fraud is stipulated to be the $7.8 million figure, which is proper as relevant conduct. (DE 64 at 10) The issue here, however, is the narrower scope of restitution. *See infra.*

[10] The government perhaps lacked any strong incentive to contest the date-range issue, because the adjustment to the criminal history had no effect on the sentence. Either way, the agreed sentence of 48 months was below the resulting guideline range.

9

(Sentencing Tr. 48:22- 49:19 (DE 82)).

> [AUSA] KOGAN: . . . Yes, as Mr. Orlando points out, we do have that stipulation that talks about Mr. Feliz being involved from 2011 to '14. The government would argue that that was what the parties agreed to.

(Sentencing Tr. 54:21-25 (DE 82)). Thereafter, the Court finally accepted the 11(c)(1)(C) plea agreement and sentenced Mr. Feliz in accordance with it.

On the interplay between the allegations in a charging document and the scope of a defendant's admissions in connection with a guilty plea, *United States v. White* is both instructive and supportive of defendant's position here. 883 F.3d 983 (7th Cir. 2018). Even for the broader purposes of relevant conduct, *White* rejected a simplistic view of the defendant's plea of guilty to a multiyear conspiracy: "Our broad holdings about the evidentiary force of admissions in a plea agreement do not hold that a general admission in a plea agreement to a conspiracy or scheme spanning a certain time conclusively establishes individual participation during that entire time." 883 F.3d at 988; *see also id.* at 989 ("The question here is just what White admitted.").

The same principle, *White* held, required it to vacate a restitution award predicated on a conspiracy that included a period during which defendant was incarcerated. *Id.* at 992 ("We vacate the restitution amount for the same reason as the loss amount."). The court declined to give binding effect to an imprecise date reference, like the one here ("no later than in or around"). Important to the *White* analysis was the government's acknowledgement of a more specific time limit at sentencing:

> The restitution amount includes about $25,000 in losses that predate the "fall of 2009." The government argues that the loose language in the plea agreement (i.e., "no later than in or around" the fall of 2009) "does not necessarily exclude" pre-2009 losses. That argument stretches too far—especially because the prosecutor expressly stated at sentencing that the government did not charge White with any conduct before his release from prison in August 2009.

10

*Id.* at 992–93. Here, the government's adherence to the 2011–2014 time frame at sentencing was not only an oral representation, but an acknowledgement of an earlier, binding stipulation in the written plea agreement.

In short, I cannot find with the requisite clarity that the actual offense to which Mr. Feliz pled guilty should be deemed to include the pre-2011 period for the limited purposes of restitution.[11]

Second, the government relies on the principle that restitution liability is joint and several. It notes that a restitution judgment was entered against Feliz's separately charged fraud co-schemer, Ms. Ravelo, in a total amount of $8,518,018. (*See* Crim. No. 15-576 DE 173.) It follows, by the government's reasoning, that Mr. Feliz is jointly liable for the included figure of $7.8 million. The short answer is that the agreement to be jointly and severally liable for restitution was entered into by Ms. Ravelo, not Mr. Feliz.[12] And the conspiracy to which Mr. Feliz admitted guilt and waived indictment, for restitution purposes, is not symmetric with that of Ms. Ravelo. Liability is presumed to be joint for the *same* obligation, not for different obligations. Unless agreed otherwise, the scope of Mr. Feliz's own restitution liability is limited by the principles discussed above. Were it otherwise, the general principle of joint liability would swallow the specific statutory limitations of 18 U.S.C. § 3663A.[13]

---

[11]   Again, I emphasize that the broader concept of relevant conduct under U.S.S.G. § 1B1.3 easily accommodates the broader time frame and the full $7.8 million amount for purposes of setting the offense level, as defense counsel acknowledges.

[12]   In the fraud case plea agreement, Mr. Feliz agrees to joint and several liability with Ms. Ravelo, but only in regard to forfeiture. (DE 64 at 5)

[13]   The government also cites the general principle that "no limitation shall be placed" on the information about a defendant that may be considered by a sentencing judge. *See* 18 U.S.C. § 3661. That is true enough for general sentencing purposes. The statutory restitution scheme, however, incorporates additional limitations:

> Although judges normally may use any information they possess to enhance a sentence, "restitution is a special case," because the statutes limit restitution to the losses caused by the offense of conviction. *United States v. Kane*, 944 F.2d 1406, 1415 n. 7 (7th Cir.1991); *see also Silkowski*, 32 F.3d at 688 ("different considerations" govern the scope of conduct relevant to restitution, in contrast to the scope of the relevant conduct provision in the Guidelines).

11

Restitution will therefore be limited to $2,534,633.00. Within seven days, preferably on a consented basis, counsel for the parties shall suggest language by which the restitution amount, limited to the 2011–2014 period, should be apportioned among the victims.

Two separate orders are filed herewith.

Dated: November 23, 2021

/s/ Kevin McNulty
_____
**Kevin McNulty
United States District Judge**

---

Accordingly, because we look only to the "specific conduct" supporting the offense of conviction, the mere fact that the November events may be "factua[lly] connect[ed]" to the later conspiracy does not make them legally relevant. *Broughton Jones*, 71 F.3d at 1148–49; *see also United States v. Jewett*, 978 F.2d 248, 252 (6th Cir.1992) ("Acts other than [those] described in a count of conviction, even when committed during the course of or in furtherance of the same fraudulent scheme, do not state independent 'offenses of conviction.'").

*Akande,* 200 F.3d at 143.